# WILLKIE FARR & GALLAGHER LLP

TARIQ MUNDIYA
212 728 8565
tmundiya@willkie.com

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

June 5, 2015

**BY ECF AND MAIL**

The Honorable William H. Pauley III
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   *Gross v. GFI Group, Inc. et al.*, No. 14-cv-09438 (WHP)

Dear Judge Pauley:

Pursuant to Section III.A of the Court's Individual Practices, we write to request a pre-motion conference on behalf of Defendants GFI Group, Inc. ("GFI"), Michael Gooch, and Colin Heffron in anticipation of a motion to dismiss the Amended Class Action Complaint ("CAC") in this action. The grounds for Defendants' anticipated motion to dismiss are as follows.[1]

**Background.** This Section 10(b) action — on behalf of *sellers* of GFI stock — arises out of a July 30, 2014 announcement by GFI, a leading intermediary and provider of trading technologies and support services to the global over-the-counter and listed markets. In that announcement, GFI stated that it had entered into agreements pursuant to which CME Group Inc. ("CME") would pay $4.55 per share in CME stock to acquire all of GFI's outstanding stock (the "CME Merger") — a 46% premium above GFI's July 29 closing stock price. (CAC ¶ 48.) GFI also disclosed that, as part of the CME Merger, an entity affiliated with Defendants Gooch and Heffron would purchase GFI's interdealer brokerage business ("IDB Business") from CME for approximately $228 million, with CME retaining GFI's two principal software divisions, Trayport and FENICS. (*Id.*)

As is common following such merger announcements, shareholder lawsuits were filed in Delaware alleging, among other things, that GFI's board of directors breached their fiduciary duties in agreeing to the CME Merger. Likely having missed the proverbial race to the courthouse, Plaintiff commenced this federal securities action several months later in November 2014 on behalf of a putative class of GFI stockholders who sold their stock during the class period (July 30, 2014 to September 8, 2014) on the novel theory that Defendants' alleged misstatements about the CME Merger artificially ***deflated*** the value of GFI's stock. The crux of Plaintiff's claim is that Defendants (i) misrepresented that the CME Merger "optimize[d] stockholder value" and was "a singular and unique opportunity to return value," and (ii) failed to disclose that GFI received an unsolicited communication from BGC Partners, Inc. ("BGC"), a GFI competitor, on July 29, 2014 requesting a meeting to discuss a possible transaction between BGC and GFI. (CAC ¶ 51.) To be clear, all of these alleged misstatements and omissions stem from a single press release on July 30,

---

[1] For the sake of brevity, this letter does not contain an exhaustive presentation of Defendants' points and authorities in support of dismissal.

2014. The "truth," Plaintiff alleges, was revealed on September 9, 2014 when BGC announced its intention to commence a tender offer to acquire GFI. (*Id.* ¶ 53.) Following that announcement, BGC and CME engaged in a robust six-month bidding war for GFI, with BGC ultimately prevailing and completing its tender offer in February 2015 at a price of $6.10 per share. BGC now owns a majority of the stock of GFI and controls its board of directors. (*Id.* ¶¶ 9-17.)[2]

As summarized below, the CAC suffers from a number of fundamental defects, each of which warrants dismissal under the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *First*, the CAC does not plead any actionable material misstatement or omission. All of the alleged material misstatements and omissions (which all arise out of the July 30, 2014 press release) are clearly inactionable under the federal securities laws. They are comprised of matters of hindsight, opinion, corporate optimism, or puffery. Plaintiff contends that Mr. Gooch's statements that the CME Merger sought to "optimize" value and was a "singular and unique opportunity" could "not have possibly been true" given his later statement in January 2015 (after GFI shareholders rejected the CME Merger) that the GFI board continued to explore means of maximizing shareholder value. (CAC ¶¶ 13-14.) But as Plaintiff concedes, that January 2015 statement came "six months later and following eight bids and counter bids" (*id.* ¶ 14) and, therefore, in no way suggests that Mr. Gooch's earlier July 2014 statements about the value of CME Merger, as it then stood, were false when made. Such attempts at pleading falsity by hindsight are routinely rejected in this Circuit. *See, e.g., Bond Opportunity Fund v. Unilab Corp.*, 2003 WL 21058251, at *10 (S.D.N.Y. May 9, 2003), *aff'd*, 87 F. App'x 772 (2d Cir. 2004) ("To be actionable, a statement or omission must have been misleading at the time it was made; liability cannot be imposed on the basis of subsequent events."); *see also Rombach v. Chang*, 2002 WL 1396986, at *5 (E.D.N.Y. June 7, 2002) (inactionable puffery); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S. Ct. 1318, 1325-27 (2015) (inactionable opinions).

Plaintiff's claim that Defendants improperly failed to disclose BGC's unsolicited July 29 expression of interest, or its prior overtures, fares no better. (CAC ¶ 51.) "[F]or an omission to be actionable, the securities laws must impose a duty to disclose the omitted information." *Thesling v. Bioenvision, Inc.*, 374 F. App'x 141, 143 (2d Cir. 2010) ("[s]ilence, absent a duty to disclose, is not misleading") (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988)). However, "no express duty requires the disclosure of merger negotiations, as opposed to a definitive merger agreement." *Id.*; *L.L. Capital Partners, L.P. v. Rockefeller Ctr. Props., Inc.*, 921 F. Supp. 1174, 1180 (S.D.N.Y. 1996) ("the unrequited desire of one party to engage in a transaction with another" is not material as a matter of law). *A fortiori*, no liability can attach to alleged non-disclosure of an unsolicited approach from a potential suitor about a speculative yet-to-be-negotiated transaction. To conclude otherwise "would result in endless and bewildering guesses as to the need for disclosure, operate as a deterrent to the legitimate conduct of corporate operations, and threaten to bury the shareholders in an avalanche of trivial information[.]" *Levie v. Sears Roebuck & Co.*, 676 F. Supp. 2d 680, 688 (N.D. Ill. 2009) (no duty to disclose "preliminary" merger negotiations). This is particularly true here, where BGC's July 29 overture had *no* price term and the parties were not even in negotiations during the class period.

Defendants' alleged omissions relating to the price and negotiation of the CME Merger also fail because they are based on the supposed non-disclosure of Plaintiff's unproven conclusions and

---

[2] Plaintiff relies heavily on discovery from the Delaware proceeding concerning the bidding war in an effort to shore up Plaintiff's fraud claims (CAC ¶¶ 58-90), but, as Defendants will show, those events are irrelevant to the misrepresentations alleged in the CAC.

2

pejorative characterizations (*see, e.g.*, CAC ¶ 51(viii) (CME acquisition price was "artificially low"); *id.* ¶ 51(vii) (sale of GFI "had not been properly explored")). "[T]the law is clear that companies need not depict facts in a negative or pejorative light or draw negative inferences to have made adequate disclosures." *Singh v. Schikan*, 2015 WL 2070222, at *7 (S.D.N.Y. May 5, 2015); *Taro Pharma. Indus. v. Sun Pharma. Indus.*, 2010 WL 2835548, at *13 (S.D.N.Y. July 13, 2010) (a defendant is not required to admit plaintiffs' version of events in its securities disclosures).

Likewise, explicit disclosures in GFI's July 30 announcement concerning Defendants Gooch and Heffron's buyback of the IDB Business (*see, e.g.*, CAC ¶ 48) flatly negate Plaintiff's assertion that Defendants failed to disclose that the effect of the CME Merger was to "place control" of the IDB Business in those individuals (*id.* ¶ 51(i)). *Fried v. Lehman Bros. Real Estate Assoc. III, L.P.*, 2011 WL 1345097, at *8 (S.D.N.Y. Mar. 29, 2011) ("Where the allegedly omitted facts are disclosed to the market, there can be no omission for the purposes of a securities fraud claim.").

*Second*, the CAC does not adequately plead scienter. An inference of scienter that is merely "plausible," "reasonable" or "permissible" does not satisfy the PSLRA's "strong inference" requirement. *Tellabs v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). A "conscious failure to disclose" is not enough under that standard. *In re Canandaigua Sec. Litig.*, 944 F. Supp. 1202, 1214 (S.D.N.Y. 1996) (scienter requires "proof that the non-disclosure was intended to mislead"); *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *17 (S.D.N.Y. Oct. 25, 2006) ("not every knowing misrepresentation creates a legal cause of action under the securities laws.") (Pauley, J.). Moreover, any inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *In re Am. Exp. Co. Sec. Litig.*, 2008 WL 4501928, at *5 (S.D.N.Y. Sept. 26, 2008) (Pauley, J.), *aff'd sub nom. Slayton v. Am. Exp. Co.*, 604 F.3d 758 (2010). Here, the far more compelling inference for why GFI did not disclose BGC's July 29 letter is not scienter, but rather that the Board, "given their prior experiences with representatives of BGC and familiarity with the industry, concluded that BGC's proposal was highly speculative in nature given its lack of any specificity, and did not ensure that discussions with BGC would result in a definitive proposal." (CAC ¶ 84 (quoting GFI's Jan. 27, 2015 Sch. 14D-9).) Indeed, when BGC later submitted a written acquisition proposal on September 15, 2014, GFI promptly disclosed receipt of that proposal and the Board's determination that the BGC proposal "could reasonably be expected to lead to a 'Superior Proposal.'" (*Id.* ¶¶ 57-59.)[3]

*Third*, because the CAC fails to plead a primary violation of §10(b), it likewise fails to state claims against Defendants Gooch and Heffron under §20(a).

Respectfully submitted,

Tariq Mundiya

cc:    Counsel of Record

---

[3] Any inference of scienter is also undercut by the absence of motive. Contrary to Plaintiff's assertion, it would be economically irrational for Defendants Gooch and Heffron to "artificially deflate" the value of GFI stock given, as Plaintiff alleges, they were owners of an entity that "controlled approximately 38% of GFI" (*id.* ¶ 51). *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994) ("In looking for a sufficient allegation of motive, we assume that the defendant is acting in his or her informed economic self-interest.").

3