MANDATE

N.Y.S.D. Case #
14-cv-9438(WHP)

18-1527
*Gross v. GFI Group, Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of September, two thousand nineteen.

PRESENT:
JOHN M. WALKER, JR.,
SUSAN L. CARNEY,
RICHARD J. SULLIVAN,
*Circuit Judges.*

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: Oct 04 2019

---

BENJAMIN GROSS, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,

*Plaintiff-Appellant–Cross-Appellee,*

v. No. 18-1527
18-1665

GFI GROUP, INC., COLIN HEFFRON, MICHAEL GOOCH,

*Defendants-Appellees–Cross-Appellants,*

NICK BROWN,

*Defendant.*

---

MANDATE ISSUED ON 10/04/2019

FOR PLAINTIFF-APPELLANT–CROSS-APPELLEE: JONATHAN M. ROTTER, Glancy Prongay & Murray LLP, Los Angeles, CA (Joseph P. Guglielmo, Scott+Scott, Attorneys at Law, LLP, New York, NY; Jack I. Zwick, New York, NY, *on the brief*).

FOR DEFENDANTS-APPELLEES–CROSS-APPELLANTS: KATHLEEN M. SULLIVAN, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY (Christopher Landau, Christopher D. Kercher, Quinn Emanuel Urquhart & Sullivan, LLP, Washington, DC; John F. Lynch, Joshua J. Card, Wachtell, Lipton, Rosen & Katz, New York, NY, *on the brief*).

Appeal from a judgment of the United States District Court for the Southern District of New York (Pauley, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on April 23, 2018, is **AFFIRMED**.

Plaintiff-Appellant–Cross-Appellee Benjamin Gross, proceeding on behalf of a certified class of investors (together, "Plaintiffs"), appeals from a judgment of the United States District Court for the Southern District of New York (Pauley, *J.*), granting summary judgment on his securities fraud claims under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a). Defendants-Appellees–Cross-Appellants GFI Group, Inc. ("GFI"), Colin Heffron, and Michael Gooch (together, "Defendants") conditionally cross-appeal the District Court's class-certification order. We assume the parties' familiarity with the underlying facts, procedural history, and arguments

on appeal, to which we refer only as necessary to explain our decision to affirm the District Court's award of summary judgment to Defendants.[1]

In essence, Plaintiffs contend that they prematurely sold their shares of stock in GFI because, as they characterize it, Defendants misrepresented the value to them of a proposed merger between GFI and a second firm, CME. Their claims rest on the following single statement made by Gooch—GFI's founder, Executive Chairman, and controlling shareholder—in a July 30, 2014 press release (the "Press Release") that announced the prospective merger: "Optimizing GFI's value for stockholders has been a goal of management since becoming a public company in 2005 and this transaction [with CME] represents a singular and unique opportunity to return value." Plaintiffs' App'x 360. Plaintiffs contend that Gooch's statement, when read in the context of the Press Release as a whole, could lead a reasonable investor to believe that the CME merger provided "the best opportunity for GFI shareholders to optimize value" and that "no alternative deal would have been better." Plaintiffs' Br. 27. In reality, Plaintiffs urge, the CME merger fell far short of "optimizing" shareholder value, and Defendants pursued the transaction because it allowed insiders Gooch, Heffron, and other senior GFI officers to purchase the brokerage portion of GFI's business back from CME at a substantial discount. Plaintiffs assert that the falsity of Gooch's statement was revealed on September 9, 2014, when a third company, BGC Partners, publicly announced an all-cash tender offer for GFI that exceeded the value to shareholders of the proposed CME transaction. GFI's stock price—which had already risen from $3.11 per share to $4.55 per share after GFI announced the CME merger—

---

[1] Because we affirm the District Court's judgment, we dismiss as moot Defendants' conditional cross-appeal from the District Court's class-certification order. *See Tr. for Certificate Holders of Merrill Lynch Mortg. Inv'rs, Inc. Mortg. Pass-Through Certificates, Series 1999-C1, ex rel. Orix Capital Markets, LLC v. Love Funding Corp.*, 496 F.3d 171, 174 (2d Cir. 2007) ("A conditional cross-appeal is conditional in the sense that the cross-appeal is reached only if and when the appellate court decides to reverse or modify the main judgment." (internal quotation marks omitted)).

further increased to $5.69 per share at the close of September 9.[2] Plaintiffs, however, did not benefit from this further price increase, having already sold their shares of GFI stock.[3]

We review a district court's grant of summary judgment *de novo*, "examining the evidence in the light most favorable to, and drawing all inferences in favor of, the non-movant." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 50 (2d Cir. 2018) (citation omitted). To prevail on a section 10(b) claim, a plaintiff must prove six elements: "(1) the defendant made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015). Here, the District Court awarded summary judgment to Defendants based on the second and sixth elements, concluding that, while a reasonable juror could find that Gooch's statement qualified as a material misrepresentation or omission, Plaintiffs did not adduce sufficient evidence that Defendants acted with the intent to defraud (i.e., scienter) or that Plaintiffs' economic losses were foreseeably caused by the materialization of the risk concealed by Gooch's statement (i.e., loss causation).

We now affirm the District Court's judgment on the alternative grounds that Gooch's statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b). *See In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 157 (2d Cir. 2015) ("It is well settled that we may affirm on any grounds for which there is a record sufficient to permit conclusions of law, including grounds not relied upon by the district court." (internal quotation marks omitted)). Having done so, we need not reach the issues of scienter and loss causation, which the District Court found dispositive.

A misrepresentation or omission is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to act." *IBEW Local*

---

[2] BGC ultimately succeeded in outbidding CME for control of GFI.

[3] In August 2017, the District Court certified a class of "all individuals and entities who sold shares of GFI common stock between July 30, 2014 and September 8, 2014." *Gross v. GFI Grp., Inc.*, No. 14CV9438, 2017 WL 3668844, at *1 (S.D.N.Y. Aug. 23, 2017).

*Union No. 58*, 783 F.3d at 389 (internal quotation marks omitted). Materiality is a mixed question of law and fact, and "[a] fraud claim may not properly be dismissed summarily on the ground that the alleged misstatements were not material unless they would have been so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 518 (2d Cir. 1994). At the same time, however, we have held some statements inactionable as a matter of law because they are "too general to cause a reasonable investor to rely upon them." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009). This holding follows from the principle that, "[t]o be 'material' within the meaning of § 10(b), the alleged misstatement must be sufficiently specific for an investor to reasonably rely on that statement as a guarantee of some concrete fact or outcome which, when it proves false or does not occur, forms the basis for a § 10(b) fraud claim." *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 185 (2d Cir. 2014).

In this case, we conclude that Gooch's statement is simply "too open-ended and subjective to constitute a guarantee" upon which a reasonable investor would rely. *Id.* at 186. The Press Release is hardly clear about what "singular" or "unique" mean in the context of the proposed transaction with CME. Without any elaboration or contextual cabining of these terms, Gooch's statement amounts to no more than a generic endorsement of the proposed merger, rather than an assertion of falsifiable facts or a guarantee of certain outcomes. Plaintiff's reliance on Gooch's reference to management's goal of "[o]ptimizing GFI's value for shareholders" to support a claim that the statement promised the best price is equally flawed. A general statement that does no more than state a goal shared by the management of every public company in no way amounts to a specific promise or guarantee, nor could it. As we have held in analogous contexts, no investor could reasonably rely on these types of vague and indefinite expressions of corporate enthusiasm when assessing a potential investment. *See, e.g.*, *Singh v. Cigna Corp.*, 918 F.3d 57, 60, 63 (2d Cir. 2019) (holding that no reasonable investor would rely on statements that a company had "established policies and procedures to comply with applicable [regulatory] requirements" as a guarantee of "satisfactory [regulatory] compliance"). To hold otherwise would "bring within the sweep

of federal securities laws many routine representations made by [companies].” *ECA*, 553 F.3d at 206.

Indeed, even where the statements being challenged were more definite and specific than Gooch’s comment, we have not hesitated to dismiss a plaintiff’s section 10(b) claim on materiality grounds. In *Lasker v. New York State Electric & Gas Corporation*, for example, we held that a company’s representation that it would “not *compromise* its financial integrity” could not be reasonably relied upon by investors as a guarantee that the company’s actions would “in no way impact [its] finances.” 85 F.3d 55, 58, 59 (2d Cir. 1996) (internal quotation marks omitted) (emphasis in original). Likewise, we concluded in *ECA* that statements touting a company’s “highly disciplined” risk management process were “puffery” because “[n]o investor would take such statements seriously in assessing a potential investment, for the simple fact that almost every investment bank makes these statements.” 553 F.3d at 205–06. More recently still, we affirmed dismissal of a section 10(b) action that challenged a company’s claim that it “prioritized *adequate* diversification of risk and avoidance of *undue* concentrations,” concluding that these alleged misstatements lacked the requisite specificity. *City of Pontiac*, 752 F.3d at 186 (internal quotation marks omitted). Although the statements at issue in these cases were undoubtedly broad and generic, they nonetheless conveyed more concrete information to investors than did Gooch’s comment, which describes the CME merger somewhat opaquely as a “singular and unique opportunity to return value.”

The context and presentation of Gooch’s statement reinforce our conclusion. The statement—the exclusive focus of Plaintiffs’ claim—is nestled in the middle of the seven-page Press Release. Those seven pages, in turn, disclose (among other things) that the proposed merger would involve corporate self-dealing with senior officers at GFI, who included Gooch. In particular, the Press Release describes the CME merger as a “two-step transaction” in which CME would first acquire GFI and then sell a portion of GFI’s business back to “a private consortium of GFI Group management, led by current Executive Chairman Michael Gooch, CEO Colin Heffron and Managing Director Nick Brown.” Plaintiffs’ App’x 359. This description, along with the document’s disclosure that the CME deal had been approved by “a Special Committee comprised solely of independent

and disinterested directors," flagged the risk that the proposed merger might benefit GFI's management at the expense of its shareholders. *Id.* Indeed, as Plaintiffs themselves note, Defendants' allegedly fraudulent scheme to buy back a portion of GFI's business from CME at a substantial discount is precisely the type of "self-dealing [that] normally [] a special committee guards against." Thus, far from suggesting, as Plaintiffs claim, that "the selling process [of GFI] was conducted in [a] way that achieved the best price possible for shareholders and that any existing or potential conflicts of interest were isolated," Plaintiffs' Reply 10, the Press Release as a whole raises basic questions about the meaning of Gooch's statement that the deal represented "a singular and unique opportunity to return value," Plaintiffs' App'x 360. The ambiguity of Gooch's assertion is heightened by the absence of any details in the Press Release about how the special committee arrived at its decision. Notably, Gooch's statement nowhere promises the "best" of anything.

Nor are we persuaded to reach a contrary conclusion by Gross's evidence suggesting that Gooch made his statement because he believed that it would lead shareholders to approve the CME deal. Undoubtedly, "a major factor in determining whether information was material is the importance attached to it by those who knew about it." *S.E.C. v. Mayhew*, 121 F.3d 44, 52 (2d Cir. 1997). We have cautioned, however, that evidence of a defendant's knowledge and intent does not render a statement actionable when that statement's "generality . . . is what prevents [it] from rising to the level of materiality required to form the basis for assessing a potential investment." *City of Pontiac*, 752 F.3d at 183. Our recent decision in *Singh* reaffirms this principle. In *Singh*, we rejected the plaintiffs' "creative attempt to recast corporate mismanagement as securities fraud," explaining that the plaintiffs' evidence of "significant regulatory violations" could not save their section 10(b) claim from dismissal because the statements that they challenged were "too general to cause a reasonable investor to rely upon them." *Singh*, 918 F.3d at 59-60, 63 (internal quotation marks omitted). Likewise, we conclude here that Gooch's statement is too "banal and vague . . . [to] invite reasonable reliance," *id.* at 60, even if Gooch may have subjectively desired such an outcome.

Finally, we reject Plaintiffs' argument that Gooch's statement was materially misleading because he (and the Press Release) omitted key details about the negotiations leading up to the announcement of the proposed CME merger, including GFI's failure to conduct a market check for alternative deals. Section 10(b) "do[es] not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). Rather, disclosure is required only when a defendant chooses to speak about material issues and the defendant's affirmative statements would be misleading without the disclosure. *See id.* ("Disclosure is required under these provisions only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." (internal quotation marks and alterations omitted)); *Caiola v. Citibank, N.A., New York*, 295 F.3d 312, 331 (2d Cir. 2002) ("[U]pon choosing to speak, one must speak truthfully about material issues."). Because Gooch's statement did not address material issues, but instead amounted merely to a generic corporate endorsement of a transaction as to which his conflict was disclosed, it did not trigger a duty to publish additional details about the underlying negotiations. As a result, Plaintiffs have not identified a misstatement or omission sufficient to support their claim of securities fraud under section 10(b).[4]

* * *

We have considered Plaintiffs' remaining arguments and conclude that they are without merit. Accordingly, the judgment of the District Court is **AFFIRMED**.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court

A True Copy

Catherine O'Hagan Wolfe, Clerk

United States Court of Appeals, Second Circuit

[4] Because Plaintiffs' section 10(b) claim fails as a matter of law, we affirm the District Court's award of summary judgment in favor of Defendants on Plaintiffs' section 20(a) claim. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (holding that, to establish a prima facie case of control person liability under section 20(a), a plaintiff must show, *inter alia*, "a primary violation by the controlled person").